Novelty Paper Box & Supply Co., Respondent, vs. Stone, Appellant.

*February 19 — March 10, 1896.*

*Contracts: Construction: Sale of corporate stock, etc.: "Stock on hand."*

1. An agreement by the principal stockholder in a corporation to assign his stock, including all his interest in the "stock on hand, stock of manufactured and partly manufactured goods now on hand in the factory of said company," did not cover manufactured goods which were then in his own possession under an agreement with the corporation by which, to reimburse him for moneys advanced to carry on the business, he was to take and dispose of such goods; and the advances made being in excess of the value of such goods, it is immaterial whether he held them as pledgee or as owner.

2. The corporation having had the benefit of such advances, its successor, claiming title through the purchasers of said stock, could not repudiate the arrangement under which the advances were made.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

On January 24, 1893, the Ripon Paper Box Company was a corporation located and doing business at Ripon. The defendant and his wife owned three fourths of the capital stock of the corporation. On the date named, the defendant entered into a written agreement with Battis & McCabe, of Oshkosh, whereby he agreed to assign to Battis & McCabe his said stock, including all his interest in the stock on hand of manufactured or partly manufactured goods in the factory of the company at Ripon, as well as all his interest in the

machinery, tools, utensils, cuts (wood and metal), tables, stoves, desks, and all its paraphernalia then used in the manufacture of paper boxes in the factory at Ripon, and Battis & McCabe thereby agreed to pay to the defendant, *Stone*, $50 upon signing the agreement, and $2,750 on or before February 1, 1893, such payment to be made in full prior to the removal of any of the machinery in said factory. It was therein further agreed that the defendant might complete the work then being manufactured in said factory, and pay Battis & McCabe for the stock used in such manufacture at the market price of such stock; that the book account should belong to the defendant up to the date of said agreement, and that he should pay all debts therein due from the company. On February 1, 1893, the defendant did so assign and transfer his said stock to Battis & McCabe.

For a long time prior to January 24, 1893, the said corporation was without money to conduct its business. By an agreement with all the other stockholders and officers, the defendant, who was such stockholder, director, and manager as mentioned, agreed to furnish money to carry on the business, and in consideration of the money so advanced he was to have the goods manufactured, or the proceeds thereof, at least to the extent of reimbursing himself for the money so advanced. He did so advance $1,660.91, and only received back out of the same $740.20, leaving a balance still due him of $920.71. After such assignment and transfer of such stock, the name of the corporation was changed to that of the plaintiff, and its location was changed to Oshkosh, where its business was thereafter conducted.

On January 30, 1894, the plaintiff commenced this action for the wrongful conversion of certain of the goods so manufactured under such arrangement with the defendant and the other officers and stockholders of the company, and demanded judgment for $261.70, with interest from February 1, 1893. The defendant answered by way of admissions,

denials, and counter allegations, setting up such agreement and understanding, and claimed the legal right to the goods so alleged to have been unlawfully converted.

At the close of the trial, a jury having been waived by the parties in open court, the court found, as matters of fact, the incorporation of the Ripon Paper Box Company, and the change of its name to the plaintiff company, as stated; that the defendant owned and transferred his stock as stated; that at the time of such transfer the defendant retained in his possession, and converted to his own use, goods, wares, and merchandise, the property of the plaintiff, to the amount and value of $244.21; that the defendant afterwards shipped to M. E. Paige & Co., of Chicago, a part of the goods, amounting to the value of $139.70, to be sold on consignment, which goods yielded the sum of $88.30, which the plaintiff received and retained with full knowledge; that the defendant is indebted to the plaintiff in the sum of $104.44 for said goods so converted; that there is no claim for an accounting in the pleadings, and no issue raised as to the indebtedness of the corporation to the defendant prior to the sale of the defendant's stock. And, as conclusions of law, the court found, in effect, that the plaintiff is estopped from claiming more than the $88.30 on account of the goods so shipped to M. E. Paige & Co.; that the plaintiff is entitled to judgment against the defendant for $104.44, with interest from the commencement of this action; that, no claim for an accounting having been raised by the pleadings, the court cannot consider the same in this action. From the judgment entered accordingly the defendant appeals.

For the appellant there was a brief by *Thompson, Harshaw & Thompson*, and oral argument by *A. E. Thompson*,

For the respondent there was a brief by *Eaton & Weed*, and oral argument by *H. I. Weed*.

CASSODAY, C. J. It was conceded on the trial, on the part. of the plaintiff, that the goods in process of manufacture when the agreement of January 24, 1893, was made would belong to the defendant upon his paying or accounting for the materials used at the market price. It is undisputed that a portion of the goods, including the goods in question, which had then been manufactured, were then stored in the defendant's storeroom or warehouse; and that they had been so manufactured and stored under the arrangement between the defendant, as the principal stockholder, director, and manager, and all the other stockholders and officers, whereby the defendant was to advance money to carry on the business, and take and dispose of the goods so manufactured, or the proceeds thereof, at least to the extent of reimbursing himself for the moneys so advanced. The plaintiff claims title through Battis & McCabe, as purchasers of the stock of the defendant and his wife, as mentioned. The agreement for such transfer covered "*stock on hand, stock of manufactured* and partly manufactured *goods now on hand in the factory of said company at Ripon.*" We do not understand that the defendant thereby intended to surrender, or did surrender, any claim for moneys he had so advanced in the business, nor that he thereby intended to surrender, or did surrender, the goods which he had previously taken and then had in his own storeroom or warehouse, either as security for or in payment of the moneys he had so advanced. It is immaterial whether he held the goods as security and as a pledgee, or as owner, since the moneys so advanced far exceeded the value of the goods so retained. This is an action at law, and not in equity; and, as we view the case, the question of the validity of the arrangement whereby the defendant so advanced the money and so received the goods is not here involved. The goods were in the possession of the defendant before the purchase of the stock by Battis &

McCabe; and there is nothing to indicate that the plaintiff has a superior right to the same. Since the Ripon Paper Box Company received and had the benefit of the moneys advanced by the defendant, the plaintiff, as its successor, is in no position to repudiate the transaction whereby the company so received the money.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.